| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **JUDGE CARTER**<br>**13 CV 4472** |

---------------------------------------x

KEVIN HICKS, on behalf of himself and all others similarly situated,

            Plaintiff,

-against-

CROOK BROTHERS PRODUCTIONS, INC.; LARRY SCHWARZ MEDIA GROUP, INC.; LARRY SCHWARZ AND HIS BAND, INC., LAURENCE SCHWARZ; JEFF CROOK;  and JOSH CROOK,

            Defendants.

---------------------------------------X

Civil Action No.

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

RECEIVED JUN 27 2013 U.S.D.C. S.D.N.Y. CASHIERS

By his attorneys Maurice Pianko of Pianko Law Group PLLC, and Jesse Strauss of Strauss Law PLLC, Plaintiff Kevin Hicks, individually and as a representative of a class and collective of all others similay situated, respectfully sets forth and alleges as follows:

### PRELIMINARY STATEMENT AND SUMMARY OF CLAIMS

1. Defendants Crook Brothers Productions, Inc., Larry Schwarz Media Group, Inc., Larry Schwarz and His Band, Inc., Larry Schwarz, Jeff Crook, and Josh Crook (collectively referred to as "Defendants," while Larry Schwarz Media Group, Inc., Larry Schwarz and His Band, Inc., Larry Schwarz are collectively referred to as the "Schwarz Defendants" and Crook Brothers Productions, Inc., Jeff Crook and Josh Crook are referred to as "the Crook Defendants" ), are well-regarded creators of entertainment for multiple platforms, including Nickelodeon, a business unit of Viacom International Inc., a division of Viacom International, Inc.  Among other entertainment, Defendants together produced "Alien Dawn," "Black Dawn" and "Team Toon" and separately created entertainment such as "Jolly Rabbit" (Schwarz Defendants).

1

2. By employing interns such as Plaintiff Kevin Hicks ("Hicks or Plaintiff") without pay, Defendants illegally reduced labor costs on their productions. Interns such as Plaintiff were an important source of labor on Defendants' productions and performed important tasks such as moving boxes, assembling, painting, and disassembling production props, cleaning the set, costuming characters, driving production vehicles, and even served as "extras" during the filming of certain scenes. All of the work performed by Plaintiff and other interns was performed for the immediate advantage of Defendants and was performed at the expense of employees or interns who otherwise would have been compensated by Defendants pursuant to applicable laws.

3. Defendants employed Plaintiff from on or about February 7, 2012 to on or about February 20, 2013, typically working 10 to 12 hours per day, but sometimes working as many as 16 hours per day. Despite performing tasks solely to the benefit of Defendants at their request – tasks that an employee would generally expect compensation for –Plaintiff was paid nothing for his work, and was not compensated at the minimum wage and overtime pay as required the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and New York State Labor Law Art. 6, §§ 190 *et seq.*, Art. 19, §§ 650 *et seq*, as well as the supporting regulations of the New York Department of Labor, codified at N.Y. Comp Codes R. & Regs, tit. 12, Part 142 *et seq.* (collectively "NYLL").

4. After working without compensation, Mr. Hicks began to be paid for his work in the wardrobe department of the "Mission Dawn" production, later renamed "Alien Dawn." With respect to his work in the wardrobe department, there was no distinction between the tasks he performed unpaid, and those performed once paid. In August 2012, Mr. Hicks was again asked to perform the same job in wardrobe, again unpaid.

5. Mr. Hicks's unpaid work for Defendants is part of a broader trend where employees are being misclassified as unpaid "interns" in an effort by employers to avoid paying wages as required by state laws and FLSA. These programs purport to be training programs, but provide little value to the worker while enriching the employer through the provision of free labor. The result is that while certain employers save wage expenses, the economy as a whole suffers from fewer paid job opportunities. Moreover, the economic and moral wellbeing of our nation is compromised due to the further marginalization of workers who cannot provide free services but rather must accept low wage employment in other sectors, thus foreclosing certain employment options, and indeed entire fields, from the already vulnerable.

6. Mr. Hicks brings this action to obtain for himself and similarly situated employees who elect to opt-into this action pursuant to the FLSA §§ 201 *et seq.* and, specifically, the collective action provision of 29 U.S.C. §§ 216(b), to obtain the wages he and other employees were unlawfully denied, including minimum wage, and overtime compensation, plus interest, liquidated damages, as well as attorneys' fees and costs.

7. Mr. Hicks also brings individual and representative wage claims under the NYLL for similarly situated employees as a class action pursuant to Federal Rule of Civil Procedure 23.

## JURISDICTION AND VENUE

8. Subject matter jurisdiction is proper in this Court for FLSA claims pursuant to 28 U.S.C. §§1331 and FLSA. Subject matter jurisdiction is proper in this Court for NYLL claims pursuant to 28 U.S.C. § 1367. Plaintiff's NYLL claims are so closely related to Plaintiff's FLSA claims that the form part of the same case and controversy.

9. Defendants all maintain offices in the State of New York, New York County and, with respect to the corporate defendants, are all New York State domestic business corporations.

10. Venue is proper is this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this district, because the addresses provided to the New York Secretary of State by Defendants are all within this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this district, including several of the instances of Defendants' unpaid employment of Plaintiff and other interns.

## PARTIES

11. Plaintiff is an individual who resides in Kings County, New York. Plaintiff is working toward a Bachelors of Arts in film studies at the University of Pittsburgh as well as a Bachelor of Science in film production at the New School in New York City. Plaintiff has worked as paid and unpaid production assistance on several film and television productions, and has worked as a house manager and sound technician for live theater.

12. Plaintiff was employed by Defendants as a "production intern" from on or about February 7, 2013 to on or about February 20, 2013. During that period, Plaintiff was a covered employee within the meaning of the FLSA and NYLL.

13. Plaintiff has consented to join this action by filing a "Consent to Join" form indicating his consent.

14. Laurence Schwarz ("Mr. Schwarz") is individual residing at an address within New York County, New York, upon information and belief. Mr. Schwarz is an officer of, director and owner of Defendants Larry Schwarz Media Group, Inc. and Larry Schwarz and His Band, Inc. Defendants Larry Schwarz Media Group, Inc. and Larry Schwarz and His Band, Inc. are New York State domestic business corporations. Throughout Plaintiff's and similarly

situated interns' employment, the Schwarz Defendants maintained control, oversight and direction over Plaintiff and similarly situated interns, including with respect to hiring, firing, compensation and other employment practices. Employees of the Schwarz Defendants maintained day-to-day control over the tasks performed by Plaintiff and similarly situated interns. The Schwarz Defendants all share the same address in New York County: 341 West 44th Street, New York, New York.

15. The Schwarz Defendants are covered employers under FLSA and NYLL and at all times employed Plaintiff and similarly situated interns.

16. Upon information and belief, Defendant Lawrence Schwarz, as Executive Producer of Defendants Larry Schwarz Media Group, Inc. and Larry Schwarz and His Band, Inc. productions, had power over personal decisions and payroll decisions, and the power to set work schedules and maintain employment records at the Schwarz Defendants. Mr. Schwarz was Plaintiff's and similarly situated interns' employer within the meaning of the FLSA and NYLL.

17. Upon information and belief, Defendants Larry Schwarz Media Group, Inc. and Larry Schwarz and His Band, Inc. are alter egos of each other, and had a unity of interest and ownership such that their continued treatment as separate entities would not be just. Upon information and belief, the relationship of Defendants Larry Schwarz Media Group, Inc. and Larry Schwarz and His Band, Inc. and Lawrence Schwarz is such that the actions of each Defendant should be imputed to each other.

18. Upon information and belief, the Schwarz Defendants exercised operational control over the productions they produced with other production companies, such as the Crook Defendants. This includes revising and approving budgets of productions, hiring and

firing and compensation of members of the cast and crew, approving the production schedule and approving or disapproving the use of unpaid interns.

19. Jeff Crook and Josh Crook are individuals residing at an address within New York State. Upon information and belief, Jeff Crook and Josh Crook are officers of, directors and owner of Defendant Crook Brothers Productions, Inc. Defendant Crook Brothers Productions, Inc. is a New York State domestic business corporation. Throughout Plaintiff's and similarly situated interns' employment, the Crook Defendants maintained control, oversight and direction over Plaintiff and similarly situated interns, including with respect to hiring, firing, compensation and other employment practices. The Crook Defendants maintained day-to-day control over the tasks performed by Plaintiff and similarly situated interns. The Crook Defendants all share the same address in New York County: 333 Hudson Street, Suite 201, New York, New York.

20. Upon information and belief, Defendants Jeff Crook and Josh Crook, as Producer and Director of Defendant Crook Brothers Productions, Inc., respectively, had power over personnel decisions and payroll decisions, and the power to set work schedules and maintain employment records. Jeff Crook and Josh Crook were Plaintiff's and similarly situated interns' employers within the meaning of the FLSA and NYLL.

21. Upon information and belief, Defendants Josh Crook and Jeff Crook and Crook Brothers Productions, Inc. are alter egos of each other, and had a unity of interest and ownership such that their continued treatment as separate entities would not be just. Upon information and belief, the relationship of Defendants Josh Crook and Jeff Crook and Crook Brothers Productions, Inc. is such that the actions of each Defendant should be imputed to each other.

22. The Schwarz Defendants and the Crook Defendants are covered employers under FLSA and NYLL and at all times employed Plaintiff and similarly situated interns.

23. Defendants engage in interstate commerce, with an annual gross volume of sales in excess of $500,000.

## NEW YORK CLASS ACTION ALLEGATIONS (RULE 23)

24. Plaintiff brings the Third, Fourth, Fifth and Sixth causes of action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and the following classes: All unpaid interns who were employed by Defendants between June 27, 2007 and the date of final judgment in this matter ("the Class"). Excluded from the Class are Defendants, Defendant's legal representatives, officers, directors, assigns and successors, the Court and Court personnel (including the judge presiding over this matter and their family members) and all persons who will submit appropriate requests for exclusion from the Class.

25. The members of the Class are so numerous that joiner is impracticable, with the size of the Class at 40 or more individuals.

26. Defendants have acted or have refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

27. Common questions of law and fact exist with respect to the Class and predominate over any questions unique to or effecting only selective members. Those questions include but are not limited to: (a) whether Plaintiff and the Class were employees within the meaning of the NYLL; (b) whether Defendants had a policy or practice of failing to pay Plaintiff and the Class minimum wage for all hours worked in violation of the NYLL; (c) whether

Defendants had a policy or practice of failing to pay Plaintiff and the Class overtime wages; (d) whether Defendants had a policy or practice of failing to pay Plaintiff and the Class spread-of-hours pay in violation of the NYLL; (e) whether Defendants provided Plaintiff and the Class statements and notices of wages, hours worked, rate of pay and gross wages as required by the NYLL; (f) the nature and extent of class-wide injury and the measure of damages for those injuries; (f) whether Defendants' policy or practice of underpaying Plaintiff and the class was instituted willfully or with reckless disregard for the law; (g) whether Defendants obtained an immediate advantage from the work of Plaintiff and the Class.

28. The claims of Plaintiff are typical of the claims of the Class because Plaintiff was subject to the same or extremely similar compensation policies and practices and has, along with the Class, sustained similar types of damages as a result of Defendants failure to comply with the NYLL.

29. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent and experienced counsel who has brought and litigated numerous class actions. There is no conflict between Plaintiff and the other members of the Class.

30. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform polices, practices, and procedures, which were in violation of the NYLL. The damages to be recouped by each member of the class, statutorily, are small compared to the expense and burden of prosecuting this litigation only on an individual basis. In the absence of Class-wide adjudication, many members of the class may otherwise forego their rights as a result of the lesser amount in controversy on

an individual basis, especially because prosecuting such a case may be burdensome. Class litigation is also superior because it will prevent duplicative litigation that would tax both the litigants and the courts. Such litigation would also risk inconstant judgments about Defendants' practices.

31. This action is properly maintainable as a class action under Fed. R. Civ. Pro. 23(b)(3).

## COLLECTIVE ACTION ALLEGATIONS

32. Plaintiff brings the First, Second, and Seventh causes of action on behalf of themselves and the following FLSA collective: All unpaid interns who were employed by Defendants between June 27, 2010 and the date of final judgment in this matter ("the Collective").

33. Defendants are liable to the Collective under FLSA for willfully failing to pay the Collective minimum wage and overtime wages and for violating record keeping and notification requirements. Upon information and belief, the Collective consists of many similar situated individuals who have been underpaid or not paid at all by Defendants in violation of FLSA and who will benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit. The Collective's members are known to Defendants, can be identified, and can be located with the use of Defendants' records. Notice should be sent to the Collective's members pursuant to 29 U.S.C. § 216(b).

## CLASS-WIDE FACTUAL ALLEGATIONS

34. During the periods in which Plaintiff, the Class, and the Collective were employed by Defendants, Defendants suffered and permitted Plaintiff, the Class, and the Collective to work without paying wages for all hours worked, without paying an overtime wage,

without paying spread-of-hours compensation, and without providing proper notices or maintaining proper records.

35. Defendants had and persist with a policy or practice of minimizing labor costs by failing to pay Plaintiff, the Class, and the Collective, despite the NYLL and FLSA's requirement that they do so.

36. Defendants' conduct toward Plaintiff, the Class and the Collective has been repetitive, willful, widespread, consistent, intentional and violated FLSA and the NYLL.

37. Defendants' conduct toward Plaintiff, the Class, and the Collective has caused significant damages to Plaintiff, the Class, and the Collective.

### FACTS OF PLAINTIFF KEVIN HICKS

38. Plaintiff was employed by Defendants as a "Production Intern" in February 2012 on Defendants' production known at the time as "Mission Dawn" but subsequently renamed "Alien Dawn."

39. Plaintiff was supervised by Defendants Jeff Crook and Josh Crook, Production Manager Claudine Marrotte, and Second Assistant Director Dion Mathews.

40. Plaintiff provided contact information to Ms. Marrotte and was instructed where and when to appear at the designated work location by daily e-mails from Second Assistant Director Dion Mathews. These e-mails included "Call Sheets" describing the production requirements.

41. As a "Production Intern" Plaintiff performed the following tasks for Defendants: